SCANNED AT PINCKNEYVILLE CC and E-mailed
6/20/19 by CB 32 ★ jec
date          initials   No.

# UNITED STATES DISTRICT COURT

for the

Southern District of Illinois

Marcus Jenkins

_____

_____

)
)
)
)
)

Case Number: **19-673-NJR**

(Clerk's Office will provide)

*Plaintiff/Petitioner(s)*

v.

JB Pritzker, Juliana Stratton
Lindsay Parkhurst
Don Harmon, Kwame Raoul
Barbara Flynn Currie - in their
*Defendant/Respondent(s)* OFFICIAL
CAPACITY

)
)
)
)
)
)
)
)

☑ CIVIL RIGHTS COMPLAINT
pursuant to 42 U.S.C. §1983 (State Prisoner)

☐ CIVIL RIGHTS COMPLAINT
pursuant to 28 U.S.C. §1331 (Federal Prisoner)

☐ CIVIL COMPLAINT
pursuant to the Federal Tort Claims Act,
28 U.S.C. §§1346, 2671-2680, or other law

## I.   JURISDICTION

**Plaintiff:**

A.   Plaintiff's mailing address, register number, and present place of confinement  5835 STATE Route 154
Pinckneyville, IL 62274
# R00902
Pinckneyville C.C

**Defendant #1:**

B.   Defendant __JB Pritzker__ is employed as

(a)   (Name of First Defendant)

__Governor__

(b)          (Position/Title)

with _____

(c)   (Employer's Name and Address)

__The People of Illinois__

At the time the claim(s) alleged this complaint arose, was Defendant #1 employed by the state, local, or federal government?   ☑ Yes   ☐ No

If your answer is YES, briefly explain:  Governor of Illinois

(Rev. 7/2010)                                           1

**Defendant #2:**

C.   Defendant ___Juliana Stratton___ is employed as

(Name of Second Defendant)

___Lieutenant Governor___

(Position/Title)

with ___The People of Illinois___

(Employer's Name and Address)

At the time the claim(s) alleged in this complaint arose, was Defendant #2 employed by the state, local, or federal government?   ☒ Yes   ☐ No

If you answer is YES, briefly explain:   LT. Governor of Illinois

**Additional Defendant(s) (if any):**

D.   Using the outline set forth above, identify any additional Defendant(s).

Defendant #3

Defendant ___Lindsay Parkhurst___ is employed as

(Name of Third Defendant)

___State Representative___

(Position / Title)

With ___The People of Illinois___

(Employer's Name and Address)

At the time the claims alleged in this complaint arose, was Defendant #3 employed by the State, local, or federal government?   Yes

If you answer is Yes, briefly explain: STATE Representative

Defendant # 4

E. Defendant __Don HARMON__ is employed as
(Name of Fourth Defendant)

__STATE SENATOR__
(Position / Title)

with __The People of Illinois__
(Employer's Name and Address)

---

At the time the claims alleged in this complaint arose, was Defendant # 4 employed by the state, local, or federal government? Yes

If you answer is Yes, briefly explain: STATE SENATOR

Defendant # 5

F. Defendant __KWAME RAOUL__ is employed as
(Name of fifth Defendant)

__Attorney GENERAL__
(Position / Title)

with __The People of Illinois__
(Employer's Name and Address)

---

At the time the claims alleged in this complaint arose, was Defendant # 5 employed by the state, local, or federal government? Yes

If your Answer is Yes, briefly explain: Attorney General

3

Defendant #6

G. Defendant __Barbara Flynn Currie__ is employed as
(Name of Sixth Defendant)

__UNKNOWN__
(Position/Title)

With __The People of Illinois__
(Employer's Name and Address)

---

At the time the claims alleged in this complaint arose, was
Defendant #6 employed by the State, Local, or federal government?
Yes

If your answer is yes, briefly explain **House Majority Leader**

## II. PREVIOUS LAWSUITS

A. Have you begun any other lawsuits in state or federal court while you were in prison or jail (during either your current or a previous time in prison or jail), e.g., civil actions brought under 42 U.S.C. § 1983 (state prisoner), 28 U.S.C. § 1331 (federal prisoner), 28 U.S.C. §§ 1346, 2671-2680, or other law?  ☒Yes ☐No

B. If your answer to "A" is YES, describe each lawsuit in the space below. If there is more than one lawsuit, you must describe the additional lawsuits on another sheet of paper using the same outline. You must list ALL lawsuits in any jurisdiction, including those that resulted in the assessment of a "strike" under 28 U.S.C. § 1915(g) and/or those that were dismissed for being frivolous, malicious, or for failure to state a claim (see 28 U.S.C. § 1915A; 28 U.S.C. § 1915(e)(2); Federal Rule of Civil Procedure 12(b)(6)). FAILURE TO FULLY DISCLOSE YOUR LITIGATION HISTORY, INCLUDING "STRIKES," MAY RESULT IN SANCTIONS THAT INCLUDE DISMISSAL OF THIS ACTION.

1. Parties to previous lawsuits:
Plaintiff(s): Marcus Jenkins

Defendant(s): Shanal Barnett, Wexford Health Soures M.D. Ronald Schaefer

2. Court (if federal court, name of the district; if state court, name of the county): United States District Court, Northern Dist.

3. Docket number: 12 CV 63836

4. Name of Judge to whom case was assigned: Ronald A. Guzman

5. Type of case (for example: Was it a habeas corpus or civil rights action?): 1983 Civil Rights (Prison Conditions)

6. Disposition of case (for example: Was the case dismissed? Was it appealed? Is it still pending?): Dismissed

7. Approximate date of filing lawsuit: 5/17/2012

8.  Approximate date of disposition: 10/7/2013

9.  Was the case dismissed as being frivolous, malicious, or for failure to
    state a claim upon which relief may be granted and/or did the court
    tell you that you received a "strike?" Failure to State A
    Claim upon Which relief may Be granted

## III. GRIEVANCE PROCEDURE

A.  Is there a prisoner grievance procedure in the institution? ☑ Yes  ☐ No

B.  Did you present the facts relating to your complaint in the prisoner
    grievance procedure?  ☐ Yes  ☑ No

C.  If your answer is YES,
    1.  What steps did you take?
        N/A

    2.  What was the result?
        N/A

D.  If your answer is NO, explain why not.
    This Complain does Not pretain to prison
    conditions.

E.  If there is no prisoner grievance procedure in the institution, did you
    complain to prison authorities?  ☐ Yes  ☑ No

F.  If your answer is YES,
    1.  What steps did you take?
        N/A

    2.  What was the result?
        N/A

G.      If your answer is NO, explain why not. This is Not A MAtteR Prison officials CAN resolve

H.      Attach copies of your request for an administrative remedy and any response you received. If you cannot do so, explain why not:

N|A

IV. Statement of Facts

The new parole system in Illinois signed into law April 1, 2019 by Governor JB Pritzker
with bipartisan support and went into effect June 1, 2019 is discriminatory and violates
Plaintiffs 14th amendment right under the United States Constitution which inflicts
direct and immediate injury to plaintiffs Illinois Constitutional right under att 1
section 2 Due Process and Equal Protection

Illinois has created a new youth parole system, public act 100-1182. Its first
since 1978 to address the rehabilitative needs of youthful offenders under (21)
whose crimes do not reflect irreparable corruption and has a greater chance to
reform. The directives of the United States Supreme Court Layed the foundation
for how youth must be treated and charged states to thereby view youthful off-
enders differently from adults. Brain science developement has been a key res-
ource that SCOTUS has recognized in analyzing the rehabilitative nature of youth
that has committed serious crimes.

Under the premise of criminal justice reform, Illinois has chose to only help
future youth offenders with their rehabilitative needs and provide them with
the mechanism by which their growth and matutity can be evaluated. P.A 100-1182
will provide;

* opportunities for an individual who was under (21) at the time of offense to
  be paroled following a hearing before the prisner review board
* provide two or three reviews starting at 10 or 20 years, depending on the
  underlying conviction
* give the individual the right to have an attorney represent him/her at parole
  proceedings
* require consideration of Miller-type facters that focus on the individuals
  youth at the time of the offense as well as any subsequent growth and maturity
  shown while incarcerated.

I am a juvenile offender See EX.1-2 and i am not offered these opportunities.
Furthermore, the SCOTUS decision on how youth should be treated/viewed is not
just relegated to incoming offenders. Their desision also applies to pre-exi-
sting offenders.

According to a consensus-building process, the new parole system is not retro-
acting because sponsors found that key stakeholders in law enforcememt and
the victims rights group/community would actively oppose any retroactively
legislative. SEE EX.3 The youth that will come into the system after June 1 2019

8

will not be any different from youth of the past. Also, the crimes that will occur after June 1, 2019 by future youth will not be new to the eyes of the law. So, with there being a distinct similarity in character and crime, youth offenders such as myself and many others should not be singed out as lost causes.

My incoming status as a juvenile (16) is synonymous with that of future juvenile offenders. We lacked maturity, problem solving skills, undeveloped sense of respon- sibility, reckless, susceptible to negative influences, including peer pressure etc.. ( Lindsay Parkhurst spoke on this-SEE EX. 4. ) So, for (ILL) to disregard the former and focus their attention and directing their resources to hepling only the latter is andintentional act of discrimination. The SCUTUS has affirmed that youth must be treated differently ~~~~~~~~~ from adults, whose crimes do not reflect irreparable corruption as Categorially less Culpable for their crimes and that they should have meaningful opportunities for release. I have no means by which to show my rehabilit- ation acheivement and that i am psychologically and socially redeemed which is what the parole system is set to determine. SEE EX. 4
The fourteenth Amedd. forbids a state to deny any person within its jurisdiction the equal protection of the law. That means that all persons similarly situated should be treated alike. U.S.,CONST,AMEND XIV

Plaintiff is subjected to cruel and unusual punishment in violaton of his 8th amend- ment Constitutional right where the confluence of the prospeative parole system and Truth-in-Sentencing exposes plaintiff to excessive sanctions and prohibite him from being restored to useful citizenship

I am simultaneously being subjected to cruel conditions by and through both, the p prospective parole system P.A 100-1182 and by truth in sentencing P.A 90-592 which i am bound by. The parole law gives youthful offenders the opportunities to earn a mid-sentence parole consideration. And, eventhough i am similarly situated ( in terms of incoming status " age-characteristics") i am not offered this meaningful opportunities. Furthermore, a Application of (TIS) on juveniles reinforces the absence of hope. I am constantly reminded by (ILL) policies and laws that, no matter how long I am incarcerated, and no matter what i do that good behavior and character improvement are immaterial. That what ever the future holds in store for the mind and spirit that, i am totally irredeemable. Therefore, i dont matter. Lieutenant Gov. (Juliana Stratton) said, young people should have an opportunity to be defined by their growth and maturity as their brains develope, rather than having their lives be defined by the worst thing they've done SEE EX.5

9

Attorney General ( Kwame Raoul ) spoke on how law makers should recognize SCOTUS message saying that they should evaluate offenders who mommitted a crime very young and has spent a considerable amount of time in Department of Corrections and to make a decision on each individual case is unjust. SEE EX. 6-7. SENATOR Harmon spoke on U.S supreme court jurisprudencce on youthful offenders and brain science development; that parole was created so years down the road we can have a second look at the offenders and say whether of not it's appropriate for them to be released. SEE EX.7-8. These people and many others support helping youth, but to distinctly distinguish between who to help as if youthful offenders like myself doesn't matter is discriminatory. This action is evil, and represent a callous indifference to my rights. I can actually be the beckon of hope and represent what growth and maturity looks like. However, because of the confluence of both public acts mentioned, i am shackled to the system with no means to demonstrate rehabilitation and earn mid-sentence parole. SEE EX.9

Illinois law makers and Governor Pritzker condones and is in agreement with these conditions because, no mechanism has been brought forth to evaluate my life and progress at all. When it comes to criminal justice reform, all laws has gone completely around juvenlies under (TIS). These conditions are deliberately and known by the defendants to be objectively cruel, and their failure to remedy them restricts my ability of being restored to useful citizenship. The cost to imprison plaintiff a year is $38,000 in Illinois. The trivial cost for a parole hearing per person to see if said juvenile offenders is rehabilitated and worthy of being released ( as Sen. Harmon ) suggested is $ 2,000

There is no rational basis for the legislature to distinguish between youth sentenced prior to the effective date of the statute and youth sentenced on or after the effective date of the statute, and therefore the non-retroactive provision of the statute violates the equal protection clause of the federal and state constitution.

Wherefore, this plaintiff respectfully ask this Honorable Court based on the overwhelming constitutional authority in the merits of his arguments and sufficient evidence that

supports those merits demonstrates immediate and direct injury to his constitutional rights under the United States Consfitution and Illinois Constitution that empowers this court to issue an injunction against the defendants and any and all officers, agents, and staff under their command or supervision authorizing the excessive sanctions of the prospective youth parole and truth in sentencing which shackles plaintiff to the system and disallows him from seeking parole and demonstrating rehabilitation. Former house speaker majority leader Barbara Flynn Currie said, our correctional system sould be premised on the idea of rehabilitation, not retribution. So that when somebody has shown that they they really are different they're really a changed person, we ought to take that seriosly. SEE EX 10-11. Well, i am not being taken serious.

V. Request for relief

A. permanant injunction against the appropriate defendants that fixes the unconstitutional conditions on to the plaintiff

B. That this court determine that plaintiff is similarly situated to the youth described in P.A 100-1182 in terms of incoming status (age) (characteristics) through the brain science development as recognized by SCOTUS

C. That the parole system of Illinioa be made retroactive for all youth under 21 in the system and for those that came into the system as a juvenile before june 1, 2019

D. Temporary order granting plaintiff a parole hearing where rehabilitation, growth and contriteness can be demonstrated which will give the board a way to analyze the lives of current juvenile offenders and the aspect of retroactivety

E. The chairman of parole board will receive $35,000 a year and the other 14 members of the board will get $30,000 a year. With P.A 100-1182 being prospective and the earlist an offender can apply for parole consideration is 2029 which would be a mimimum accumulated payment cost to board members of $4,550,000. I ask that this court Beem this payment unnecessary and halted until 2029 or when retroavtivety is active, which ever comes first.

F. any other relief the court deems proper

V.    **REQUEST FOR RELIEF**

State exactly what you want this court to do for you.  If you are a state or federal prisoner and seek relief which affects the fact or duration of your imprisonment (for example: illegal detention, restoration of good time, expungement of records, or parole), you must file your claim on a habeas corpus form, pursuant to 28 U.S.C. §§ 2241, 2254, or 2255. Copies of these forms are available from the clerk's office.

VI.    **JURY DEMAND** (*check one box below*)

The plaintiff ☑ does   ☐ does not request a trial by jury.

## DECLARATION UNDER FEDERAL RULE OF CIVIL PROCEDURE 11

I certify to the best of my knowledge, information, and belief, that this complaint is in full compliance with Rule 11(a) and 11(b) of the Federal Rules of Civil Procedure. The undersigned also recognizes that failure to comply with Rule 11 may result in sanctions.

Signed on: ___06/20/19___
(date)

___Marcus Jenkins___
Signature of Plaintiff

___5836 State Route 154___
Street Address

___Marcus Jenkins___
Printed Name

___Pinckneyville, Illinois 62274___
City, State, Zip

___R00902___
Prisoner Register Number

___N/A___
Signature of Attorney (if any)

Marcus Jenkins
         Plaintiff

    v

Jb Pritzker                                    case no:
Juliana Stratton
LIndsay Parkhurst
Don Harmon
Kwame Ruoal
Barbara Flynn Curris


Memorandum of Law for the attached complaint


1. Under recent line of eight amendment cases, the United States Supreme Court has recognized that through the development of brain science, conduct of juveniles is not morarlly reprehensible as that of an adult. Roper v Simmons 543 U.S 551. 125; Graham v Florida 560 U.S 48 (2010); Miller v alabama 567 U.S 460 132 (2012)

2. Effective Junee 12019. Youthful offenders in Illinois under the age of 21 will be allowed to go before a parole board after serving 10, 15, or 20 years depending on the crime. These individuals will be allowed to demonstrate redemptive qualities, character growth and rehabilitation. P.A 100-1182, which is not retroactive is not in violation of the 14th amend. U.S.C.A 14th

3. Fourteenth Amendment forbids a state to deny any person within its jurisdiction the equal protection of the law. That means that all persons similarly situated should be treated alike. U.S.Const. Amend., XIV

4. The confluence of both P.A 100-1182 (youth parole) and 90-592 (truth in sentencing) violates plaintiffs eight amendment right under the United States Constututiion(U.S.Const Amend.VIII), the proportionate penalties clause of the Illinois Constitution(Ill,Const Art 1, sec 2 ) and infringes on cruel and unusual punishment. Plaintiff is not allowed to demonstrate rehabilitation therby, allowing juveniles to being restored to useful citizenship.

5. House bill 531 is intended to only help future youth but not all as awhole.This

discriminatory act is in direct violation of due process of the law 14th amend and the 8th amendment.

Marcus Jenkins
Marcus Jenkins
5835 State Route 154
Pinckneyville, IL 62274

EX. 1

2016 IL App (1st) 133286
Appellate Court of Illinois,
First District, Second Division.

The PEOPLE of the State of
Illinois, Respondent–Appellee,

v.

Marcus JENKINS, Petitioner–Appellant.

No. 1–13–3286.
|
June 21, 2016.

### Synopsis

**Background:** Petitioner, who was a juvenile when he was convicted as an adult, in the Circuit Court, Cook County, Henry Simmons, J., of first-degree murder, appealed. The Appellate Court, Cohen, P.J., 333 Ill.App.3d 534, 776 N.E.2d 755, 267 Ill.Dec. 383, affirmed. Petitioner filed postconviction relief petition, which was granted, and resulted in a reduced sentence. About one year later, petitioner filed a new postconviction relief petition. The Circuit Court, Cook County, James Michael Obbish, J., denied petitioner leave to file his petition, and he appealed.

**Holdings:** The Appellate Court, Neville, J., held that:

[1] petitioner's resentencing led to a new judgment, and therefore, petitioner had a right to file a petition challenging the new judgment without leave of the court, and

[2] the petition was sufficient to state the gist of a constitutional claim, and therefore, should not have been dismissed.

Reversed and remanded.

West Headnotes (2)

**[1]     Criminal Law**
    ⬦ Proceedings Subject to Review
110  Criminal Law
110XXX  Post-Conviction Relief

110XXX(A)  In General
110k1414  Proceedings Subject to Review
110k1415  In general
Postconviction relief petitioner's resentencing led to a new judgment, and therefore, petitioner had a right to file a petition challenging the new judgment without leave of the court, even though he did not label his new petition as an initial postconviction relief petition. S.H.A. 725 ILCS 5/122–1(a–5, f).

2 Cases that cite this headnote

**[2]     Criminal Law**
    ⬦ Counsel
110  Criminal Law
110XXX  Post-Conviction Relief
110XXX(C)  Proceedings
110XXX(C)3  Hearing and Determination
110k1651  Necessity for Hearing
110k1655  Particular Issues
110k1655(6)  Counsel
Postconviction relief petition, filed as a matter of right, which adequately alleged facts to support a claim that trial counsel provided ineffective assistance when he failed to request an instruction on second degree murder, was sufficient to state the gist of a constitutional claim, and therefore, should not have been dismissed; there was no strategic purpose for the failure to request the instruction on second degree murder, as the jury would need to find all the elements of first degree murder before it would consider the second degree murder instruction, so the instruction would not have jeopardized petitioner's interests, and the jury might have the accepted the option of second degree murder if the court had offered it. U.S.C.A. Const.Amend. 6.

Cases that cite this headnote

### Attorneys and Law Firms

**\*522** Michael J. Pelletier, Alan D. Goldberg, and Linda Olthoff, all of State Appellate Defender's Office, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Mary Needham, and Whitney Bond, Assistant State's Attorneys, of counsel), for the People.

## OPINION

Justice NEVILLE delivered the judgment of the court, with opinion.

**\*\*763** ¶ 1 When a postconviction petition leads to resentencing, does a new petition filed after the resentencing count as an initial postconviction petition, or should courts treat it as a successive postconviction petition, which a petitioner has no right to file unless he can show cause and prejudice? We hold that the court should treat the petition as an initial postconviction petition, which the petitioner has a right to file, and which the trial court should dismiss only if the petitioner fails to state the gist of a claim for a deprivation of his constitutional rights. We find that Marcus Jenkins' postconviction petition states the gist of a constitutional claim, so we reverse the dismissal of the petition and remand for further proceedings.

## ¶ 2 BACKGROUND

¶ 3 On August 26, 1998, Marcus Jenkins, then 16 years old and a member of the Gangster Disciples, walked home from school with Ricky Hamilton, a member of the Milwaukee Kings, and another boy. On the way home, on a busy street, they encountered David Stopka of the Spanish Cobras and Omar Negron of the Ashland Vikings, who were at war with Hamilton's gang. In the course of the encounter, a stray bullet killed Edna DeLaRosa. Police arrested Jenkins the next day.

¶ 4 Jenkins spoke to an assistant State's Attorney at the police station and signed a handwritten statement about the shooting. According to the handwritten statement, Hamilton traded insults with Stopka and Negron. Hamilton then handed Jenkins a gun and told him to shoot Stopka and Negron. Jenkins "fired the gun at the two guys before they were able to get guns and come back and shoot at him and Ricky." All the boys ran from the scene. Jenkins followed Ricky as they ran through an alley. At the end of the alley he turned and saw Stopka,

about 15 feet away, holding a bat. Jenkins fired the gun and ran off.

¶ 5 Prosecutors charged Jenkins with first degree murder. A trial held in 2000 ended with a hung jury. At the retrial, Detective Alfonso Bautista testified that, at the police station the day after the shooting, Jenkins told Bautista that Jenkins had problems at school with members of rival gangs. He brought a gun to school on August 26, 1998, and left it outside the school. He retrieved it before he started to head for home. He handed the gun to Hamilton when Hamilton asked for it, but then Hamilton handed it back and told Jenkins to shoot. Jenkins admitted that he later fired the fatal bullet.

**\*523** **\*\*764** ¶ 6 Negron testified about the gang rivalries and the encounter with Hamilton and Jenkins on August 26, 1998. When he saw Hamilton holding the gun, he and Stopka ran, and he heard shots as he ran. He and Stopka saw Hamilton and Jenkins again a few blocks away. Stopka picked up a bat and Negron held a bottle. Hamilton ran away from Stopka and Negron, and Stopka chased him wielding the bat. Negron heard more shots.

¶ 7 The trial record shows that defense counsel did not object to the State's instructions and did not offer any additional instructions.

¶ 8 During deliberations, the jury sent the judge a note to tell the judge that the jury could not reach a unanimous verdict. The judge told the jurors to continue deliberating. After five hours of deliberations, the jurors sent a second note with much the same message. The judge sequestered the jurors overnight. The next day, the jury reached unanimity, finding Jenkins guilty of first degree murder. The court sentenced Jenkins to 50 years in prison. The appellate court affirmed the judgment. *People v. Jenkins,* 333 Ill.App.3d 534, 542, 267 Ill.Dec. 383, 776 N.E.2d 755 (2002).

¶ 9 Jenkins filed a postconviction petition in 2003. The trial court granted the petition and the State appealed. *People v. Jenkins,* No. 1-09-1377 (2010) (unpublished order under Supreme Court Rule 23). In 2009, before the appellate court decided the appeal, Jenkins sought leave to file a second postconviction petition. The trial court denied Jenkins' request. The appellate court affirmed the trial court's decision to grant the initial postconviction petition. *Id.* On March 8, 2012, the proceedings following

- For first-degree murder and aggravated criminal sexual assault, consideration would occur after 20 years of actual incarceration, with additional consideration at 30.
- The bill does not apply to (a) those sentenced to natural life, (b) those that committed predatory criminal sexual assault or (c) those who murdered a police officer (or other peace officers).
- The bill also ensures that victims, witnesses, and other concerned citizens may be heard (protecting identities) by the Board whenever release is considered.
- **It provides attorneys** to indigent applicants to aid in case for parole.
- It is prospective only (no one currently incarcerated is eligible)
- The bill allows for the Prisoner Review Board to fully investigate and allow the supervised release of those inmates who have demonstrated actual rehabilitation.

**Why isn't the bill retroactive?**

X
- Over the course of a three-year consensus-building process, sponsors found that key stakeholders in law enforcement and in the victim rights community would actively oppose any retroactive legislation.
- State's Attorneys assert that retroactive application of law is unconstitutional. While many legal experts disagree, this argument has not been resolved in the minds of key legislative leaders.
- We believe retroactivity is both critical and possible, but not on a quick time frame.
- Retroactivity in criminal justice reform impacts more than parole, and creating retroactive application of all criminal justice reforms will require a bigger movement, a movement which Restore Justice Illinois and partners are actively building.
- Sponsors wanted to start the process of returning parole to Illinois with a limited scope, hoping to utilize the legislative process to expand parole opportunities over time.
- Ultimately, sponsors and stakeholders wanted to make sure that youth coming into court in 2019 would begin to experience the benefit of knowing they had a chance for parole in their future, generating hope and opportunities for rehabilitation, which should reduce negative incidents and behaviors for the individuals as they enter custody. Waiting would have meant depriving incoming individuals of this real and meaningful opportunity.

EX. 3

# 04 DEC HB531:

# FREQUENTLY

# ASKED QUESTIONS

Posted at 22:51h in Uncategorized by Restore Justice    0 Comments    0 Likes
Share

### What is the impact of HB531?

- The bill is the first step to modernize our state's criminal justice system by creating new opportunities for parole for young people facing extreme sentences.
- Illinois remains an outlier when it comes to parole: the state hasn't had a full parole system since 1978 and is one of only 16 states in this category.
- The bill aligns with SCOTUS decisions that charge states to view youthful offenders as "categorically less culpable" for their crimes, and that they should have **meaningful opportunities for release**.

### How did it pass?

- The bill passed both chambers with **bipartisan** support after years of **consensus-building, negotiation** and **education** lead by the bill's sponsors, Majority Leader Barbara Flynn Currie (D), Representative Lindsay Parkhurst (R) and Senator Don Harmon (D).
- Illinois State's Attorney Association was neutral (some support, some oppose, some neutral), and victim rights groups were neutral.
- The Prisoner Review Board played a key role in negotiations and in educating lawmakers about parole.
- A broad coalition of organizations and activists, including **inmate family members,** public defenders, and members of the faith community contributed to educating lawmakers about the impact of long-term sentencing without the chance of parole.

### What does the bill do?

- HB 531 SA 1 creates mid-sentence parole consideration **for those 20 or under when the crime** occurred.
- For most crimes, consideration can happen after 10 years of actual incarceration, with additional consideration hearings at 15 and 20 years if denied release.

STATE OF ILLINOIS
100th GENERAL ASSEMBLY
HOUSE OF REPRESENTATIVES
TRANSCRIPTION DEBATE

150th Legislative Day                                    11/28/2018

heinous crimes. They're adults and they should have to serve their sentence."

Speaker Turner: "Chair recognizes Representative Parkhurst."

Parkhurst: "Thank you, Mr. Speaker. I rise in support. In Illinois you can't rent a car until you're 25 years old. Twenty-five is not a magic number. The insurance company research showed teenagers and young adults lack judgment and are not responsible so they are in a high risk category. Too high to be able to rent a car. Juvenile Justice has similar research showing the brain is not fully developed until age twenty-five. This research shows juvenile offenders lack maturity and are excessively influenced by peer pressure. Currently juvenile offenders tried as adults have no chance for parole. We lock them up and throw away the key. The United States Supreme Court held children are categorically less culpable than adults and more capable of change. The Supreme Court specifically stated, it is difficult even for expert psychologists to differentiate between the juvenile offender, whose crimes reflect unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption. I am proud to cosponsor this Bill designed to educate and rehabilitate our youth. And provide eventual relief from long term incarceration for certain crimes committed as children. This Bill provides an opportunity for youthful offenders to rehabilitate, remediate, and reenter society. This Bill allows juvenile offenders eligibility for parole after a certain time, allowing for a rehabilitation path during incarceration for crimes committed in their youth. I urge an 'aye' vote. I truly

Currie:   "This would affect people who were under the age of 21,
          when they committed a crime that sent them to the correctional
          facility."

Breen:    "And a whole range of very, very serious crimes would be
          impacted and now be eligible for additional parole that were
          not previously?"

Currie:   "Because we don't have parole in the State of Illinois.
          So yes, you're right. There are people who will have committed
          crimes, will have served time in the state penitentiary and
          under this Bill the young people, those under the age of 21
          when they committed the offense, would have the opportunity
          after 10 years, in some cases after 20 years… in the event of
          a particularly heinous act never… But for many there would be
          the opportunity to go to the Prisoner Review Board and ask
          for the opportunity of parole."

Breen:    "And… and as I understand it… just to make sure my analysis
          is correct. This is… so first degree murder would be covered
          under this after 20 years?"

Currie:   "After 20 years and if it's a murder of a first responder
          that person would never have a chance to seek support from
          the Prisoner Review Board."

Breen:    "And then aggravated criminal sexual assault would be
          allowed to apply for parole after 20 years. Is that right?"

Currie:   "I believe that's right."

Breen:    "Okay, Class X offenses would be 10 years."

Currie:   "I believe that's correct."

Breen:    "Okay. To the Motion. Ladies and Gentlemen, the DuPage
          States Attorney has contacted me and is just very much against
          this. We're letting folks out that have committed extremely

Illinois.gov (/)

# Illinois News

## Gov. Pritzker Signs Legislation Creating New Youth Parole System

Monday, April 1, 2019 - Governor, Office of the

**Chicago** — Surrounded by victims' rights advocates and legislative champions, Governor JB Pritzker signed HB 531 which creates a new parole system for youth facing long sentences.

"Today is an example of what's possible when stakeholders and leaders from both parties come together in a sincere way to bring about real bipartisan reform," **said Governor JB Pritzker.** "The challenges that face our justice system are entrenched and significant, but they are not insurmountable - as we are showing today. With vision and compassion, we can make real progress and put Illinois on course to becoming a model for criminal justice reform."

For the first time, this legislation creates a mid-sentence parole consideration system for those under 20 at the time of their conviction.

Victims, witnesses and others will have the opportunity to provide input, while their identities are protected, to the Prisoner Review Board as it evaluates each case.

"I believe in second chances, I believe in redemption, I believe these are the values we share," **said former House Majority Leader Barbara Flynn Currie.**

"By allowing young people to earn a mid-sentence parole consideration, it opens the doors for rehabilitation," **said Lieutenant Governor Juliana Stratton.** "Young people should have an opportunity to be defined by their growth and maturity as their brains develop, rather than having their lives be defined by the worst thing they've done."

HB 531 also creates a comprehensive preparation process for youth in the justice system to ensure they receive information on the parole process, legal guidance and representation, and rehabilitation along the way.

Consideration can take place after 10 actual years of incarceration for most crimes, with additional consideration hearings at 15 and 20 years if denied release. For higher crimes like first-degree murder and aggravated criminal sexual assault, consideration can take place after 20 actual years of incarceration, with an additional consideration at 30 years.

The bill signing ceremony took place at BBF Family Services, an organization that serves youth and families in Chicago's North Lawndale neighborhood.

Stay Informed

Amber Alerts (http://www.amberillinois.org/)
Emergencies & Disasters (https://www.illinois.gov/ready)
Flag Honors (/Pages/News/flag-honors.aspx)
Road Conditions (http://www.gettingaroundillinois.com/)
Traffic Alerts (http://www.iltrafficalert.com/)
Get Email Updates (https://www.illinois.gov/gov/Pages/CommunicationsOptIn.aspx)

STATE OF ILLINOIS
100th GENERAL ASSEMBLY
REGULAR SESSION
SENATE TRANSCRIPT

57th Legislative Day                               5/31/2017

I think it's bad public policy in the first place.  The sentencing
is in a -- place because we put the sentencing in place, so if we
feel that a criminal law sentencing range is too stringent for
that particular criminal offense, then that needs to be addressed.
To open up a -- a -- a blanket opportunity here, I just think it's
bad public policy and it goes against, frankly, the -- the entire
point of the -- the -- the Criminal Code here.  I -- I do understand
the fact that it's not a guarantee, that it's a prisoner review
board, but if the issue is they've been sentenced too long, then
you ought to go after the individual crime that you're worried
about why they've been sentenced too long and then have a straight
up or down vote on that, not punt this to some unelected board,
because the State's Attorneys are elected locally, we're elected
to set a sentencing range in motion in the front end for any
particular crime, but now we're basically going to say, well, never
mind the sentencing range we've set into motion, you know, don't
worry about that, here's -- here's an end run around that system
and -- and I just -- I just think this is bad public policy.  And
with that, I'd urge a No vote.

PRESIDING OFFICER:    (SENATOR LINK)

    Senator Raoul, for what purpose do you rise?

SENATOR RAOUL:

    To the bill, Mr. President.

PRESIDING OFFICER:    (SENATOR LINK)

    To the bill.

SENATOR RAOUL:

    First off, I want to commend the sponsor for working on this
over time.  I know -- and as he noted, the Supreme Court, and it's
not just liberals on the Supreme Court, but -- but the entire

Some people, you know, have accused me of being soft on crime over on this side of the aisle, so here's a situation where I'm going to break with that accusation and actually ask for a No vote as well. A lot of times -- you know, I'm not, unlike many of my colleagues over here, a former prosecutor, and so on a lot of these issues, I do defer to the experts and the professionals. And for as long as I've served, the State's Attorney from the -- the -- the county that has the most amount of residents that I represent, which is DuPage County, for the first time as long as I've served, he called this morning, very concerned about this bill and what we were about to do with this proposal. I think Senator Connelly articulated very well the concerns with this bill. This -- this might be something that I could consider if we set the age limit lower than twenty, but I just think when you start talking about nineteen-year-olds and twenty-year-olds, that is, to -- to quote Senator Connelly, "a bridge too far." Senator, I'd love to be able to support you in your efforts on bills like these. This is one I just can't.

PRESIDING OFFICER: (SENATOR LINK)

Senator Rose, for what purpose do you rise?

SENATOR ROSE:

Thank you. To the bill, please.

PRESIDING OFFICER: (SENATOR LINK)

To the bill.

SENATOR ROSE:

I -- despite my sharing of joys a moment ago with the sponsor, we're going to share some concerns on this one. I am extremely worried about this, and when you look at the -- well, I'll just put it this way, I don't think it's a bridge too far, as much as

STATE OF ILLINOIS
100th GENERAL ASSEMBLY
REGULAR SESSION
SENATE TRANSCRIPT

57th Legislative Day                                    5/31/2017

Supreme Court recognized that the age of an offender when they commit the crime should weigh in on how we treat their long sentence and that we -- we should be evaluative of offenders on an individualized basis.  The Governor, when he came into office, recognized that in criminal justice we have moved to a place where we've moved away from individualized evaluation and he appointed a criminal justice reform commission to reverse some of the negative, easy -- easy legislative letter material policies that we put in place so we could say we were tough on crime.  That has cost us fiscally.  We can't afford it.  But, secondly, it's not just.  We ought to empower the Prisoner Review Board and -- and -- and judges to evaluate, to use their discretion to evaluate individual circumstances.  A prisoner review board is not going to open up the gates of the Department of Correction {sic} (Corrections) and let every youthful -- every offender that may have committed a crime in their young days out.  The sky is not going to fall.  But we ought to recognize a message that the Supreme Court of these United States of America sent us to say that we evaluate these offenders who may have committed a crime when they were very young and who have spent a considerable amount of time in the Department of Corrections and make a decision based on each individual case, and not doing so is unjust.   It's inconsistent with the principles of -- of criminal justice and -- and I urge an Aye vote on this bill.

PRESIDING OFFICER:  (SENATOR LINK)

        Senator Harmon, to close.

SENATOR HARMON:

        Thank you, Mr. President.  Thank you, Ladies and Gentlemen of the Senate for the debate.  I would like to close by pointing out

STATE OF ILLINOIS
100th GENERAL ASSEMBLY
REGULAR SESSION
SENATE TRANSCRIPT

57th Legislative Day                                    5/31/2017

that the opposition voiced on the Floor today is the exact reason
this is a good bill and we should pass it. The Supreme Court --
the U.S. Supreme Court's jurisprudence on youthful offenders is
moving forward and is relying upon the -- the brain science of
development. And the science of brain development suggests that
young people don't reach the age of fully formed brains at eighteen
or at twenty-one. It's not till the mid-twenties, so we're still
a few years away from the -- the brain science here. But to the
point made, there is no judge on the planet who can look at a
nineteen-year-old and say, I know for a fact that you're the kind
of young person who is going to mature and rehabilitate in prison
or you're the kind who is never going to get out of prison. That's
why we create this parole process, so that ten years or fifteen
years down the road, we can have a second look at the offender and
say whether or not it's appropriate for them to be released. The
Prisoner Review Board is in favor of this bill. The State's
Attorneys Association is neutral. I'm hopeful that the Governor
will sign it. To the concern over victims, a concern that I
shared, victims were at the table. This is prospective only. It
will not disturb any victims who are -- whose offenders have
already been imprisoned. This is an important piece of legislation
that we're advancing. I want to thank Dan Johnson, who's here in
the gallery. He did yeoman's work on behalf of Restore Justice
Illinois in bringing all the stakeholders together and reaching a
successful conclusion. Let's reward all that work with your Aye
votes.

PRESIDING OFFICER: (SENATOR LINK)

The question is, shall House Bill 531 pass. All those in
favor will vote Aye. Opposed, Nay. The voting is open. Have all


## The Illinois Department of Corrections

Pinckneyville Correctional Center
5835 State Route 154 • Pinckneyville, IL 62274-3410 • (618) 357-9722 TDD: (800) 526-0844

# MEMORANDUM

DATE:      3/15/19

TO:        R00902 Jenkins, Marcus                              5D72

FROM:      Christina Batson
           Record Office Supervisor, TA

SUBJECT:   Earned Program Sentence Credits (EPSC)

The Record Office has received a goal statement confirming your participation in one of our educational classes. After a review, it has been determined that you have successfully met your goal and have been recommended for an award of EPSC. According to Illinois statute 730ILCS 5/3-6-3(a)(2)(i) you are ineligible for an award of sentence credits because the award would reduce your sentence below 100%. Your 48 days of successful program participation has been documented and added to your master record.

Thank you,

*Christina Batson*

CC: Record Office

*Mission: To serve justice in Illinois and increase public safety by promoting positive change in offender behavior, operating successful reentry programs, and reducing victimization.*

**www.illinois.gov/idoc**

STATE OF ILLINOIS
100th GENERAL ASSEMBLY
HOUSE OF REPRESENTATIVES
TRANSCRIPTION DEBATE

150th Legislative Day                    11/28/2018

Speaker Turner:    "The question is, 'Shall Senate Bill 427, pass
        the veto of the Governor notwithstanding?' The Motion
        requires 71 votes. All those in favor signify by voting 'aye';
        all opposed vote 'nay'. The voting is open. Have all voted
        who wish? Have all voted who wish? Have all voted who wish?
        Mr. Clerk, please take the record. On a count of 78 voting in
        'favor', 33 voting 'opposed', and 0 voting present, Senate
        Bill 427, having received the required Three-fifths Majority,
        the Motion to override prevails and Senate Bill 427 is
        declared passed notwithstanding the Governor's Veto. On page
        6 of the Calendar, under the Order of Concurrence, we have
        House Bill 531, Leader Currie."

Currie:    "Thank you, Speaker and Members of the House. I urge that
        the Body approve a concurrence with Senate Amendment 1 to
        House Bill 531. Many people in this chamber and many of our
        constituents across the state do not know that nobody who is
        imprisoned in the State of Illinois has eligibility for
        parole. Thirty-five of our sister states give people the
        opportunity to go before a parole board, to say I've seen the
        error of my ways, I am now an improved, better person and it
        may be appropriate for me to be released. All this measure
        does is just say that people who committed crimes, while they
        were under the age of 21, will after 10 years, in some cases
        20 years, in some cases never, have the opportunity to go to
        the Prisoner Review Board, to say I am a different person,
        and I do think that it would be appropriate for me to be
        released. In no way is this a get out of jail free card. I
        have no reason to think that the Prisoner Review Board would
        apply any but the most stringent standards, to a decision

EX. 11

STATE OF ILLINOIS
100th GENERAL ASSEMBLY
HOUSE OF REPRESENTATIVES
TRANSCRIPTION DEBATE

150th Legislative Day                                      11/28/2018

whether to release somebody after 10 years or after 20. But I do think that our correctional system should be premised on the idea of rehabilitation, not just retribution. Rehabilitation so that when somebody has shown that they really are different they're really a changed person, we ought to take that seriously. We ought to take it into account. We ought to give them a second chance. Think of St. Paul on the road to Damascus. Think about what we know about what we know about brain research that says that young people, and the subject of this Bill is young people, do not always have good judgment. They haven't always understood the consequences of their actions. So I hope you will support me in approving the concurrence motion on Senate Amendment #1 to House Bill 531. This is a critical change in our criminal justice system. To recognize that young people should be given, if they deserve it, a second chance. Happy to answer your questions and I'd appreciate your 'aye' vote."

Speaker Turner:    "Members, there are numerous people seeking recognition on this measure. We will be moving to a two minute timer. Please try to keep your remarks as brief as possible. Chair recognizes Representative Breen for further discussion."

Breen:    "Thank you, Mr. Speaker. Will the Sponsor yield?"

Speaker Turner:    "Sponsor will yield."

Breen:    "And, Representative, just for the… ensure the Body is correct about the affect of your Bill. You are impacting folks who are ages 18 to 21 or roughly 18 to 21, when they committed these very serious crimes. Is that correct?"

SCANNED AT PINCKNEYVILLE CC and E-mailed
6/20/19 by CB 39 ×pgs
date       initials   No.



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
prisoneres'@ilsd.uscourts.gov

## ELECTRONIC FILING COVER SHEET

Please complete this form and include it when submitting any type of document, letter, pleading, etc. to the U.S. District Court for the Southern District of Illinois for review and filing.

JENKINS, MARCUS                    R00902
Name                               ID Number

Please answer questions as thoroughly as possible and circle yes or no where indicated.

1. Is this a new civil rights complaint or habeas corpus petition?    (Yes) or No

   If this is a habeas case, please circle the related statute:   28 U.S.C. 2241 or 28 U.S.C. 2254

2. Is this an Amended Complaint or an Amended Habeas Petition?    Yes or (No)

   If yes, please list case number: _____

   If yes, but you do not know the case number mark here: _____

3. Should this document be filed in a pending case?    Yes or (No)

   If yes, please list case number: _____

   If yes, but you do not know the case number mark here: _____

4. Please list the total number of pages being transmitted:    **39**

5. If multiple documents, please identify each document and the number of pages for each document. For example: Motion to Proceed In Forma Pauperis  6 pages; Complaint  28 pages.

| Name of Document | Number of Pages |
|---|---|
| COMPLAINT | 14 |
| EXHIBITS | 14 |
| IFP & EXHIBITS | 6 |
| APT. OF COUNSEL & EXHIBITS | 7 |

Please note that discovery requests and responses are NOT to be filed, and should be forwarded to the attorney(s) of record. Discovery materials sent to the Court will be returned unfiled.